UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BONNIE LOPEZ, individually as sister and Special Administrator for the Estate of MELODY MORGAN, deceased; COLLEEN LACKEY, individually as mother of MELODY MORGAN, deceased,<br><br>          Plaintiffs,<br><br>v.<br><br>THE STATE OF NEVADA ex rel. NEVADA DEPARTMENT OF CORRECTIONS, WARDEN DWIGHT NEVEN, individually; GARY PICCININI, ASSISTANT WARDEN, individually; BRYAN SHIELDS, individually; OFFICER JOEL TYNNING, individually; OFFICER KARISSA CURRIER; OFFICER JAZMINA FLANIGAN; NURSE JANE BALAO; NURSE BRIGIDO BAYAWA; NURSE LEILANI FLORES; NURSE ROSEMARY MCCRARY; NURSE MA LITA SASTRILLO; NURSE CHRIS SHIELDS; DOES I through X; and ROE ENTITIES I through X, inclusive,<br><br>          Defendants. | Case No. 2:21-cv-01161-ART-NJK<br><br>ORDER |

This case arises out of the tragic death of Melody Morgan ("Morgan"), who died by suicide on April 28, 2018, after hanging herself at Florence McClure Women's Correctional Center ("Florence McClure"). Plaintiff Bonnie Lopez ("Lopez") is the special administrator for Morgan's estate and is also Morgan's sister. Plaintiff Colleen Lackey ("Lackey") is Morgan and Lopez's mother. She brings this action in her own capacity as the mother and as an heir to the decedent. Plaintiffs' First Amended Complaint ("FAC") alleges the following causes of action: (1) 42 U.S.C. § 1983 (Eighth Amendment – Deliberate Indifference to Serious Medical Need); (2) 42 U.S.C. § 1983 (Fourteenth Amendment – Loss of Familial Association); (3) Negligence; (4) Wrongful Death; (5) Gross Negligence; (6)

Neglect of Vulnerable Person; (7) Negligent Hiring, Training and Supervision; and (8) Professional Negligence. (ECF No. 1-2.)

Before the Court is Defendant Lieutenant Karissa Currier's Motion for Summary Judgment (ECF No. 80.) Also before the Court is Defendant Officer Jazmina Flanigan's Motion for Summary Judgment. (ECF No. 69.)

## I.   BACKGROUND

Plaintiffs allege the following. Decedent Melody Morgan was diagnosed with bipolar disorder, schizophrenia, and multiple personality disorder, and she had approximately three psychiatric hospitalizations. (ECF No. 1-2 at ¶ 31.) Morgan also "had a history of suicidal ideations" and had attempted suicide multiple times since age fourteen. (*Id.* at ¶ 32.) In December 2012, Morgan was arrested and detained for various criminal charges. While detained, she was placed on suicide watch for suicidal ideation. On December 21, 2012, she attempted suicide and was again placed on suicide watch. (*Id.* at ¶¶ 33-34.)

In 2013, Morgan pled guilty to a felony and was incarcerated at Florence McClure in Las Vegas, Nevada. (*Id.* at ¶ 36.) Upon admittance at Florence McClure, Morgan's Presentence Investigation Report, Nevada Department of Corrections Transport Form, and other intake forms identified her mental health issues and suicidal ideations. (ECF No. 117-1 at 2; ECF No. 117-2 at 2-4.) Subsequent evaluations at Florence McClure further documented these mental disorders and suicidal tendencies. (ECF No. 117-3 at 70:23-71:01.) Morgan was later transferred to the Jean Conservation Camp, a minimum-custody camp in Nevada for female offenders. (ECF No. 1-2 at ¶ 38.) On April 19, 2018, Morgan and another incarcerated individual escaped from the Jean Conservation Camp. (*Id.* at ¶ 39.) Law enforcement apprehended Morgan on April 26, 2018, after her mother, Lackey, reported her location. (*Id.* at ¶¶ 44–45.) Before law enforcement apprehended Morgan, Lackey told Defendant Officer Bryan Shields that Morgan had a history of mental illness and suicide attempts and requested officials put

Morgan on suicide watch because of the risk she would hurt herself if re-captured, especially if she discovered her mother's role in her reincarceration. (*Id.* at ¶¶ 40–42.; ECF No. 118-6 at 37:18-38:15; ECF No. 118-3 at 144:19-145:18.) Officer Shields relayed Lackey's concern to Defendant Lieutenant Karissa Currier at Florence McClure. (ECF No. 1-2 at ¶ 13; ¶ 48.)

Lieutenant Currier and Officer Flanigan dispute what happened after this phone call. According to Lieutenant Currier, on April 26, 2018, she called Officer Flanigan to convey Lackey's concerns to medical staff and have Morgan placed on suicide watch. (ECF No. 118-8 at 37:20-39:10.) Lieutenant Currier claims that she ordered Officer Flanigan to inform the medical staff at Florence McClure of Lackey's concern, but Officer Flanigan denies that Lieutenant Currier gave her that command. (ECF No. 1-2 at ¶ 14; ¶¶ 49–50.) Officer Flanigan testified that if she had received such a call, she would have written it down in her notes, added the information to a shift log entry on her computer, asked follow up questions, and notified medical staff. (ECF No. 118-9 at 38:13-39:25.) Officer Flanigan stated that she checked her personal notes and shift log and neither documented the April 26 call; however, she did not keep her personal notes. (ECF No. 115-9 at 43:01-43:25.) Lieutenant Currier did not document the call in a shift log either, although she stated in her deposition that shift command officers do not complete shift logs. (ECF No. 115-8 at 47:12-47:15.)

Following Morgan's apprehension, law enforcement took Morgan to Florence McClure on April 26, 2018. (ECF No. 1-2 at ¶ 51.) Morgan was informed that her mother had assisted in locating her. (*Id.* at ¶ 46.) The Florence McClure medical staff neither received any messages regarding Lackey's concerns nor conducted a psychological or psychiatric evaluation of Morgan. (*Id.* at ¶ 56.) Nurse Bayawa claims that if medical staff had received information concerning Morgan's high suicide risk, then Morgan may have been placed in a suicide room, which is a stripped cell with a camera, suicide blanket, and check ins every 15

minutes. (ECF No. 115-11 at 60:23-62:22.) Two days later, on April 28, 2018, Morgan hanged herself in her cell at Florence McClure. (ECF No. 1-2 at ¶ 56; 58.)

On May 7, 2018, Lieutenant Currier wrote an incident report. In the report, she stated that she had immediately called the infirmary after receiving Lackey's concerns from Officer Shields. Later, she was asked who she talked to, but she could not recall at the time. She later remembered that she had spoken to Officer Flanigan. When she called Officer Flanigan to discuss the call, Officer Flanigan said that she did not recall having the conversation. (ECF No. 115-10 at 2.)

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting or disputing a fact "must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *Id.*

In determining summary judgment, courts apply a burden-shifting analysis. A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmovant bears the burden at trial, as is the case here, the movant can meet its burden by either (1) presenting evidence to negate an essential element of the nonparty's case; or (2) by

demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case. See *id.* at 323-24. After the movant has met its burden, the burden shifts to the nonmovant to come forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although "[o]n summary judgment the inferences to be drawn from the underlying facts...must be viewed in the light most favorable to the party opposing the motion," *id.* (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)), the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the non-moving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat. Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981)). Instead, to survive summary judgment, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing admissible evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

If the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, then the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 250. "If, as to any given material fact, evidence produced by the moving party. . . conflicts with evidence produced by the nonmoving party . . . we must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). If reasonable minds could differ on material facts, summary judgment is inappropriate because summary judgment's purpose is to avoid unnecessary

trials only when the material facts are undisputed; if not, the case must proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995) (citing *Lindahl v. Air France*, 930 F.2d 1434, 1436 (9th Cir. 1991)).

# IV. ANALYSIS

## A. EIGHTH AMENDMENT CLAIMS

The Court must determine whether Defendants Currier and Flanigan potentially violated the Eighth Amendment. Prison officials violate the Eighth Amendment's cruel and unusual punishments clause when they are "deliberately indifferent" to a prisoner's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 102–05 (1976). Such a violation "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 105); *see also Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) (requiring a prisoner to demonstrate that any alleged delay in medical care led to further injury).

A claim for deliberate indifference to serious medical need can be asserted by a pretrial detainee or a prisoner. *Horton by Horton v. City of Santa Maria,* 915 F.3d 592, 599 (9th Cir. 2019) (discussing standards for deliberate indifference). A pretrial detainee's claim of deliberate indifference is brought as a Due Process violation under the Fourteenth Amendment, while a prisoner's similar claim is a violation of the Eighth Amendment. *Id.* As explained in *Horton,* while the elements of both claims are the same, they differ in the required showing of deliberate indifference. *Id.* at 602. To demonstrate deliberate indifference, the plaintiff must show two things: (1) "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations and quotations omitted).

1    The Ninth Circuit differentiated these claims in *Gordon* in 2018 when it
2    held that a pretrial detainee's Fourteenth Amendment claim for deliberate
3    indifference is analyzed under a "purely objective standard." *Horton*, 915 F.3d at
4    602 (citing *Gordon v. County of Orange*, 888 F.3d 1118, 1125-26 (9th Cir. 2018)).
5    Under *Gordon*, to prove deliberate indifference a pretrial detainee must show that
6    there was "a substantial risk of serious harm to the plaintiff that could have been
7    eliminated through reasonable and available measures that the officer did not
8    take, thus causing injury that the plaintiff suffered." *Id.* (quoting standard from
9    *Castro*, 833 F.3d at 1068-71, that was adopted in *Gordon*, 888 F.3d at 1125-26).
10   In contrast, a prisoner's claim for deliberate indifference under the Eighth
11   Amendment is analyzed under a partially *subjective* standard that requires a
12   plaintiff to show "an objective risk of harm and a subjective awareness of that
13   harm." *Id.* at 600*, citing Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010),
14   vacated, 563 U.S. 915 (2011), opinion reinstated in relevant part, 658 F.3d 897
15   (9th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

16   Because the serious medical need here involved risk of suicide, the Ninth
17   Circuit's holdings in *Conn* and *Clouthier v. County of Contra Costa,* 591 F.3d 1232,
18   1241-43 (9th Cir. 2010) are particularly relevant. *See Conn*, 591 F.3d at 1105
19   (reversing summary judgment in favor of officers who failed to report risk of
20   detainee's suicide attempt and threats); *Clouthier*, 591 F.3d at 1254 (reversing
21   summary judgment in favor of mental health worker who removed suicide
22   prevention measures). Although *Conn* and *Clouthier* each concerned pretrial
23   detainees, both cases were decided before *Gordon,* so the court analyzed the
24   claims under the then-current, Eighth Amendment test. *Horton,* 915 F.3d 592
25   (citing *Conn*, 591 F.3d at 1095)). To show deliberate indifference in *Conn,* the
26   plaintiff was required to show "an objective risk of harm and a subjective
27   awareness of that harm.*" Horton,* 915 F.3d 592 (citing *Conn*, 591 F.3d at 1095)).
28   Because Morgan was a prisoner, the claims here are governed by the Eighth

Amendment standard, which is the same standard applied in *Conn* and *Clouthier*.

### 1. Serious Medical Need

Plaintiffs have demonstrated "a serious medical need." The Ninth Circuit has held that "[a] heightened suicide risk or an attempted suicide is a serious medical need." *Conn*, 591 F.3d at 1095 (citing, inter alia, *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994)). "The requirements for mental health care are the same as those for physical health care needs." *Doty* 37 F.3d at 546. While *Conn* involved Fourteenth Amendment Due Process claims brought on behalf of a pretrial detainee, the "serious medical need" analysis is the same for prisoner Eighth Amendment claims. *Id.* Here, Lackey informed Officer Shields that Morgan had hurt herself and attempted suicide in the past and would do so again if she was re-incarcerated, especially given her mother's role in locating her. (ECF No. 1-2 at ¶¶ 40-42, 47.) Thus, the Court finds Plaintiffs' circumstances "satisf[y] the objective component of a serious medical need." *Kamakeeaina v. City & Cty. of Honolulu*, No. CIV. 11-00770 JMS, 2014 WL 1691611, at *7 (D. Haw. Apr. 29, 2014), aff'd sub nom. *Kamakeeaina v. Maalo*, 680 F. App'x 631 (9th Cir. 2017) (finding statements made by plaintiff to the defendants that plaintiff was "ready to commit suicide" were sufficient to show a serious medical need).

### 2. Indifference to that Need

To prove deliberate indifference under the Eighth Amendment, Plaintiffs must meet a "'subjective deliberate indifference' standard." *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (internal citations omitted). This requires Plaintiffs to show that defendants were "(a) *subjectively aware* of the serious medical need and (b) failed to adequately respond." *Conn*, 591 F.3d 1081 at 1096 (internal citations omitted) (emphasis in original). In *Conn*, the court reversed summary judgment in favor of officer defendants who failed to make any report of a detainee's concerning behavior because a genuine issue of fact existed as to whether defendants were subjectively aware of a detainee's suicidal

ideations and self-harm when she tried to choke herself and screamed "kill me or I'll kill myself". 591 F.3d at 1097-98. In *Clouthier,* the court reversed summary judgment in favor of a mental health specialist because a genuine issue of material fact existed as to whether they were deliberately indifferent to pretrial detainee's substantial risk of suicide when they removed suicide prevention measures and neglected to determine if the detainee needed additional care despite evidence they were on notice of the detainee's substantial risk of suicide. 591 F.3d at 1244-45.

Turning to Lieutenant Currier and Officer Flanigan, the question is whether they were *subjectively aware* of Morgan's risk of suicide and failed to adequately respond. *See Conn*, 591 F.3d 1081 at 1096. "Officer Shields notified Defendant Currier of Plaintiff Lackey's concern about the high risk of Morgan committing suicide." (ECF No. 1-2 at ¶ 48.) Thus, Lieutenant Currier had personal knowledge of Morgan's heightened suicide risk. While Lieutenant Currier disputes that she "*knew* Morgan was in substantial danger of imminent suicide or that Currier's purported actions would be likely to increase that danger," (ECF No. 80 at 15) (emphasis in original) a reasonable factfinder could find Officer Shield's message clearly conveyed the high risk of Morgan committing suicide. The Court finds Plaintiffs' allegations sufficient to raise a genuine issue of material fact as to whether Lieutenant Currier (or Officer Flanigan if Lieutenant Currier conveyed to her lackey's concerns) failed to adequately respond to Morgan's known suicide risk.

Defendants Lieutenant Currier and Officer Flanigan dispute whether Lieutenant Currier informed Officer Flanigan of Lackey's concerns. (ECF No. 1-2 at ¶¶ 49-50.) Failure to report a prisoner's suicidal ideations is not an adequate response to such a serious medical need. *See Conn*, 591 F.3d at 1098. Although both defendants cite to *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) for the proposition that failing to inform medical staff "was at worst negligent and does

not rise to the level of a constitutional violation" (ECF Nos. 69 at 20; 80 at 17-18), that Sixth Circuit case is not binding and concerned a very different factual scenario. While the officer in *Spears* allegedly failed to report certain information about the decedent to EMTs, he knew EMTs conducted a medical assessment and determined the decedent did not need to be transported to the hospital. 589 F.3d 249, 255-56 (6th Cir. 2009). By contrast, there is nothing in this record indicating that Lieutenant Currier or Officer Flanigan knew for certain that medical staff would perform a mental health assessment, and in fact medical staff never did so. In *Conn*, the defendants did not even attempt to argue failing to report a serious risk of suicide was an appropriate response. 591 F.3d at 1098. Plaintiff has provided sufficient evidence for a reasonable jury to find that Lieutenant Currier and Officer Flanigan were deliberately indifferent by failing to report Morgan's high risk of suicide based on Inspector Shields' statement that he relayed Lackey's concerns about Morgan's suicide to Lieutenant Currier, who claims that she called Officer Flanigan to relay these concerns, and Nurse Bayawa's testimony that the nurses never received this information. (ECF Nos. 1-2 at ¶ 13, ¶ 48; 115-11 at 60:23-61:06;118-8 at 37:20-38:19.)

### 3. Causation

Finally, the Court must determine whether the alleged deliberate indifference was both an actual and a proximate cause of Plaintiffs' harm. *Castro*, 797 F.3d at 667 (citing *Lemire v. Cal. Dep't of Corr. & Rehab*, 726 F.3d 1062, 1074 (9th Cir. 2013)). This causation analysis applies to both Eighth and Fourteenth Amendment claims. *See Gordon,* 888 F.3d at 1125 (describing the requirements for a pretrial detainee's Fourteenth Amendment medical care claim, including a causation requirement); *Lemire*, 726 F.3d at 1074 (citing *Conn*, 591 F.3d at 1098-01) (explaining that Eighth Amendment deliberate indifference claims require a showing of both actual and proximate cause). Answering the question of whether Morgan suffered sufficient harm, is straightforward. Morgan ended her life, which

1   constitutes harm sufficient to defeat summary judgment.

2       The second question calls for a deeper analysis. Conduct is an actual cause
3   of injury "only if the injury would not have occurred 'but for' that conduct." *White*
4   *v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990) (internal citations omitted). Actual
5   or "but-for" causation is "purely a question of fact." *Robinson v. York*, 566 F.3d
6   817, 825 (9th Cir. 2009). "Once it is established that the defendant's conduct has
7   in fact been one of the causes of the plaintiff's injury, there remains the question
8   whether the defendant should be legally responsible for the injury"—in other
9   words, whether the defendant's actions were a proximate cause. *White*, 901 F.2d
10  at 1506. While a defendant "'is not the proximate cause of [the plaintiff]'s alleged
11  injuries if another cause intervenes and supersedes their liability for the
12  subsequent events[,] . . . foreseeable intervening causes . . . will not supersede
13  the defendant's responsibility.'" *Conn*, 591 F.3d at 1101 (quoting *White*, 901 F.2d
14  at 1506). "'If reasonable persons could differ' on the question of causation then
15  'summary judgment is inappropriate and the question should be left to a jury.'"
16  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1080 (9th Cir. 2013)
17  (quoting *White*, 901 F.2d at 1506).

18      At issue is whether Lieutenant Currier and Officer Flanigan's alleged failure
19  to notify Florence McClure's medical staff about Morgan's being a suicide risk is
20  causally linked to her death. Lieutenant Currier and Officer Flanigan both
21  contend that Plaintiffs' own theory of the case is that the medical staff should
22  have conducted a mental health assessment, detected any suicide risk, and put
23  Morgan on suicide watch even without knowing about Lackey's concerns. Thus,
24  they argue Plaintiffs do not even present a theory causally linking defendants'
25  failure to relay Lackey's concern to the medical staff and the lack of a mental
26  health assessment. Both defendants claim this lack of causation entitles them to
27  summary judgment on all claims against them. (ECF No. 69 at 9; ECF No. 80 at
28  8.) Plaintiffs counter that medical staff's failure to do an intake of Morgan does

1   not relieve Lieutenant Currier or Officer Flanigan of their duties and that their
2   failure to pass along Lackey's suicide concerns arguably led to Morgan taking her
3   own life. (ECF No. 118 at 24.)

4          Nurse Bayawa's testimony demonstrates that medical staff may have
5   treated Morgan differently if they had been alerted by Lieutenant Currier or
6   Officer Flanigan that she was a suicide risk. Specifically, Nurse Bayawa testified
7   that medical staff treat "a report from an officer, a caseworker, anybody in NDOC"
8   as "100 percent acute" and medical staff would have placed Morgan in a suicide
9   room and called a psychologist from the mental health department to conduct a
10  screening. (ECF No. 118-5 (Deposition transcript of Bayawa) at 60:23-62:14.) She
11  further explained that Morgan may not have been housed differently based on a
12  general, less specific concern for her mental health because "[t]he standing
13  classification of [Morgan], even for years, was 1-1 in mental" meaning "[t]hat she's
14  very stable." (*Id.* at 56:01-56:13.) This evidence indicates that a reasonable jury
15  could find that Lieutenant Currier or Officer Flanigan's failure to report that
16  Morgan was a suicide risk is causally linked to her death because if they had
17  reported the information, medical staff would have responded differently, and
18  Morgan may have received treatment that prevented her suicide. (*Id.* at 62:04-
19  62:22.)

20         Based on these facts, the Court is satisfied that Plaintiffs presented
21  sufficient evidence of actual and proximate causation to defeat summary
22  judgment and give rise to a jury question whether Lieutenant Currier's and
23  Officer Flanigan's alleged inactions caused Morgan's eventual suicide. *Conn*, 591
24  F.3d at 1098. Regarding actual cause, construing all the evidence in the light
25  most favorable to Plaintiffs, the Court finds that a reasonable jury could conclude
26  that Lieutenant Currier or Officer Flanigan failed to pass along Lackey's concern
27  to the Florence McClure medical staff, and that was a but-for cause of Morgan's
28  suicide.

1       As for proximate cause, the Court finds that Plaintiff has "presented
2   sufficient evidence of foreseeability that the question of proximate cause must be
3   decided by a jury." *Id.* at 1102. The Ninth Circuit's decision in *Conn* is instructive.
4   There, a pretrial detainee, Brenda Clustka, committed suicide while housed in
5   the Washoe County Jail in Reno, Nevada. *Id.* at 1091. Two days before Clustka's
6   suicide, the defendant police officers picked Clustka up in a paddy wagon after
7   they found her intoxicated on the sidewalk. *Id.* at 1092. On the way to the jail,
8   Clustka attempted suicide by wrapping her seatbelt around her neck; when the
9   defendants stopped to intervene and restrain her, "[s]he yelled something to the
10  effect of, 'You lied to me. Just kill me. I'll kill myself then.'" *Id.* When they arrived
11  at the jail, the defendants did not "notif[y] jail personnel that Clustka had tried
12  to choke herself or that she had threatened to commit suicide[, and] . . . did not
13  write a report nor inform their supervising sergeant about the incident that day."
14  *Id.* After being released from jail, Clustka was taken to an emergency room where
15  she was admitted for observation and, shortly after being released from the
16  hospital, she was arrested and taken back to the Washoe County Jail. *Id.* at 1093.
17  At the emergency room and during the jail intake process, medical officials—none
18  of whom knew about Clustka's previous suicide attempt—screened Clustka and
19  determined that they did not need to put Cluska on suicide watch. *Id.* The
20  morning after she was booked in jail, Clustka committed suicide. *Id.*

21      Based on these facts, the Ninth Circuit found that the plaintiffs "presented
22  sufficient evidence of actual and proximate causation to defeat summary
23  judgment and give rise to a jury question whether the officers' omissions caused
24  Clustka's eventual suicide." *Id.* at 1098. The Ninth Circuit rejected the
25  defendants' argument that the medical screenings that occurred after they failed
26  to report the attempted suicide were an intervening cause, noting that, "[w]hen
27  medical examiners have insufficient information about the patient they are
28  diagnosing, they are likely to give an inaccurate diagnosis." *Id.* at 1101. By failing

to report Clustka's choking and threat of suicide, the officers deprived medical staff of critical information for their evaluation. More important, by doing so, they foreseeably undermined the detainee's access to effective medical evaluations and adequate mental health care. *Id.*

If Lieutenant Currier or Officer Flanigan had informed any medical staff about Morgan's suicidal state, then the message might have prompted and informed examinations, potentially leading to accurate diagnoses and an acceptable response. Thus, Plaintiff has pointed to sufficient evidence tending to prove that Morgan's suicide was a foreseeable consequence of Lieutenant Currier or Officer Flanigan failing to communicate Lackey's concerns. A jury could reasonably conclude that their alleged inaction was a moving force and proximate cause of Morgan's suicide.

In sum, the Court finds Plaintiffs' allegations sufficient to show genuine issues of material facts as to whether Lieutenant Currier and Officer Flanigan were deliberately indifferent to Morgan's heightened risk of suicide in violation of the Eighth Amendment.

**B. FOURTEENTH AMENDMENT CLAIMS**

Next, the Court turns to Plaintiffs' Fourteenth Amendment claims for impermissible interference with familial association against Lieutenant Currier and Officer Flanigan. Officers violate the Fourteenth Amendment's substantive due process protections when their "conduct 'shocks the conscience.'" *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692-93 (9th Cir. 2019) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)). The proper analysis turns on whether the officer had time to deliberate prior to the conduct at issue. "Where actual deliberation is practical, then an officer's deliberate indifference may suffice to shock the conscience." *Tatum v. Moody*, 768 F.3d 806, 821 (quoting *Wilkinson*, 610 F.3d at 554). In contrast, if "a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the

conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

Here, Parties agree that deliberate indifference is the proper standard. (ECF Nos. 69 at 17-21; 80 at 15-18; 115 at 15-16.) Lieutenant Currier and Officer Flanigan clearly had time to deliberate whether to inform medical staff of Lackey's concerns. Lieutenant Currier spoke to Officer Shields the morning of April 26, 2018 and allegedly called Officer Flannigan immediately after to relay the information. (ECF No. 115-10 at 2.) Morgan committed suicide on April 28, meaning defendants had two days to inform medical staff of Morgan's high risk of suicide. (*Id.*) As discussed in the Eighth Amendment section, since this Court finds Plaintiffs' allegations sufficient to raise a genuine issue of material fact concerning whether Currier and Flanigan acted with deliberate indifference, the Court denies their motions for summary judgment. *See Lemire*, 726 F.3d at 1075 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998) ("Just as the deliberate indifference of prison officials to the medical needs of prisoners may support Eighth Amendment liability, such indifference may also 'rise to the conscience-shocking level' required for a substantive due process violation.")

## C. STATE LAW CLAIMS

Because this Court finds that a jury must resolve the question of actual and proximate cause, it would be inappropriate to grant Lieutenant Currier's and Officer Flanigan's requests for summary judgment on the state law claims. In their motions for summary judgment, Lieutenant Currier and Officer Flanigan argue "[t]he lack of causation also warrants summary judgment on the state law claims, which require actual and proximate cause." (ECF No. 69 at 17; ECF No. 80 at 14-15.) However, as discussed above, a jury could reasonably conclude Lieutenant Currier's and Officer Flanigan's purported inaction was both an actual and proximate cause of Morgan's death.

///

1    **D. QUALIFIED IMMUNITY**

2          Having found Plaintiffs raised a genuine issue of material fact as to whether
3    Lieutenant Currier and Officer Flanigan violated state law and the Eighth and
4    Fourteenth Amendments, the Court must now determine whether qualified
5    immunity applies. Qualified immunity shields certain government officials from
6    liability unless their conduct violates "clearly established statutory or
7    constitutional rights of which a reasonable person would have known." *Hope v.*
8    *Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818
9    (1982)). The point of shielding officials from liability except when they violate
10   "clearly established" rights is to "ensure that before they are subjected to suit,
11   officers are on notice their conduct is unlawful." *Id.* (quoting *Saucier v. Katz*, 533
12   U.S. 194, 206 (2001)). Nonetheless, officials who violate statutory or
13   constitutional rights knowingly or through plain incompetence are not shielded
14   from liability. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Ashcroft v.*
15   *al-Kidd*, 563 U.S. 731, 743 (2011)). Thus, if "every 'reasonable official would have
16   understood that what he is doing violates that right,'" then the right is clearly
17   established, and qualified immunity does not provide a defense. *See al-Kidd*, 563
18   U.S. at 741. For a constitutional or statutory right to be clearly established, there
19   does not need to be a factually indistinguishable case spelling out liability, but
20   existing precedent "must have placed the statutory or constitutional question
21   beyond debate." *Id.*

22         The Ninth Circuit has held that "[i]t is clearly established that the Eighth
23   Amendment protects against deliberate indifference to a detainee's serious risk
24   of suicide." *Conn*, 591 F.3d at 1102 (citing *Cabrales v. Cty. of Los Angeles*, 864
25   F.2d 1454 (9th Cir. 1988), cert. granted and judgment vacated, 490 U.S. 1087
26   (1989); *Cavalieri v. Shepard*, 321 F.3d 616, 621 (7th Cir. 2003); *Colburn v. Upper*
27   *Darby Tp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)). "When a [prisoner] attempts or
28   threatens suicide . . ., it is obvious that the [official] must report the incident to

those who will next be responsible for her custody and safety." *Conn*, 591 F.3d at 1102 (citing *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454 (9th Cir. 1988), cert. granted and judgment vacated, 490 U.S. 1087 (1989).

Contrary to Defendants argument, the Ninth Circuit's decision in *Horton* fails to support their claim of qualified immunity. In *Horton,* the Ninth Circuit confirmed that *Conn* and *Clouthier* supplied clearly established law on deliberate indifference to risk of suicide. *Horton*, 915 F.3d at 600-601 (discussing *Conn* and *Clouthier*). The court distinguished *Horton* because it involved very different facts, explaining that at the time of the incident in *Horton* the court "had held that officers who failed to provide medical assistance to a detainee should have known that their conduct was unconstitutional in two instances, neither of which resemble the facts of this case." *Id.* In *Conn*, the court rejected qualified immunity because "when a detainee attempts or threatens suicide on en route to the jail, it is obvious that the transporting officers must report the incident to those who will next be responsible for her custody and safety." *Horton*, 915 F.3d at 601 (citing *Conn*, 591 F.3d at 1102). In *Clouthier,* the court rejected qualified immunity because "a reasonable mental health professional could not have thought that it was lawful to remove key suicide prevention measures put in place by a prior Mental Health staff member." *Horton,* 915 F.3d at 600 (citing *Clouthier*, 591 F.3d at 1244-45).

*Horton* involved very different facts than *Conn* and *Clouthier* because the risk of suicide was not clear and the timeline was much shorter. In *Conn* and *Clouthier* it was clear that the detainees were suicidal (or on suicide watch in *Clouthier*) within days of their suicides. *Horton*, 915 F.3d at 601. In *Horton* the risk of suicide was not clear because there was evidence casting doubt on the likelihood of suicide, including Horton's cooperative behavior, his girlfriend's statements, and the fact that medical professionals had concluded he was not suicidal two weeks earlier. *Horton*, 915 F.3d at 601. Also, Horton had been left

1     alone less than thirty minutes before attempting to commit suicide, so the

2     window of knowledge and opportunity to respond was much shorter than in *Conn*

3     and *Clouthier*. *See Conn*, 591 F.3d at 1091 (detainee committed suicide some 48

4     hours after suicidal threats); *Clouthier*, 591 F.3d at 1237-40 (detainee jailed for

5     several days before suicide prevention measures were removed). Based on these

6     factual differences, the court held in *Horton* that qualified immunity applied

7     because a reasonable officer would not have known that failing to attend to

8     Horton *immediately* would be unlawful under the law at the time of the incident.

9     *Horton,* 915 F.3d at 601.

10         This case is governed by *Conn* because the risk of suicide was clear and

11     two days passed between Morgan's apprehension and her suicide, so Currier or

12     Flanigan knew of and failed to report Morgan's suicide risk. *Id.* at 601; (ECF No.

13     1-2 at ¶ 56; 58). This case aligns with the Ninth Circuit's approach in *NeSmith v.*

14     *Olsen*, 808 Fed. Appx. 442, 444-45 (9th Cir. 2020), which relied on *Conn* and

15     *Clouthier* and distinguished *Horton*. In *NeSmith,* the Ninth Circuit held that

16     NeSmith's rights were clearly established when prison officials observed a rope

17     hanging from NeSmith's light the night before his suicide yet failed to take any

18     preventative measures, primarily relying on the Ninth Circuit's prior decisions in

19     *Conn* and *Clouthier*. Although the defendants tried to rely on *Horton,* the Ninth

20     Circuit distinguished that case because "Horton had made no clear threat of

21     suicide or suicide attempt." *NeSmith*, 808 Fed. Appx. at 445 (citing *Horton*, 915

22     F.3d at 601). Here as in *NeSmith*, the risk of suicide was known, and the timeline

23     would have allowed Currier or Flanigan to report or respond to that risk.

24     A reasonable jury could conclude that Morgan posed an objectively serious risk

25     of suicide, that Lieutenant Currier or Officer Flanigan was subjectively aware of

26     that risk yet failed to respond, and that Plaintiff suffered harm as a result. On

27     the current disputed record, "a grant of summary judgment ... with regard to

28     qualified immunity would be inappropriate." *Id.* (denying qualified immunity in

Fourteenth Amendment detainee suicide case applying Eighth Amendment framework because "it is obvious" officers must report suicide attempts or threats to "those who will next be responsible for her custody and safety"); *see also Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998) ("Courts should decide issues of qualified immunity as early in the proceedings as possible, but when the answer depends on genuinely disputed issues of material fact, the court must submit the fact-related issues to the jury.") (citing *Liston v. Cty. of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997); *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)) ("If a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial.")

## IV. CONCLUSION

It is therefore ordered that Defendant Lieutenant Currier's Motion for Summary Judgment (ECF No. 80) and Defendant Officer Flanigan's Motion for Summary Judgment (ECF No. 69) are denied.

DATED THIS 29th day of September 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE